IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
       PELVIC REPAIR SYSTEMS
        PRODUCT LIABILITY LITIGATION       MDL No. 2325

-----------------------------------------------------------------
THIS ORDER RELATES ONLY TO CIVIL ACTIONS:

| | |
|---|---|
| **Centola v. AMS, Inc.** | **2:14-cv-29705** |
| **Elkins v. AMS, Inc.** | **2:14-cv-30578** |
| **Casias v. AMS, Inc.** | **2:14-cv-30580** |

## MEMORANDUM OPINION AND ORDER

Pending in the three above-styled civil actions are the Motion of Defendant American Medical Systems, Inc. ("AMS") for Sanctions,[1] along with an Affidavit in Support of Reasonable Attorney's Fees and Costs;[2] and Plaintiffs' Motion for Reasonable Attorney's Fees and Costs.[3] Although Muhammed-Zoheb Bhojani was provided with notice of the motions and was given ample time to respond in opposition, no response has been forthcoming. Therefore, the motions are ripe for resolution. Having fully considered the motions, and for the reasons set forth below, the court **GRANTS** both the Motion for Sanctions of AMS and Plaintiffs' Motion for Reasonable Attorney's Fees and Costs as set forth herein. Muhammed-Zoheb Bhojani is hereby **ORDERED** to pay American Medical

---

[1] ECF No. 50 in *Centola v. AMS*; ECF No. 47 in *Elkins v. AMS*; ECF No. 49 in *Casias v. AMS*.

[2] ECF No. 70 in *Centola v. AMS*; ECF No. 60 in *Elkins v. AMS*; ECF No. 69 in *Casias v. AMS*.

[3] ECF No. 72 in *Centola v. AMS*; ECF No. 61 in *Elkins v. AMS*; ECF No. 71 in *Casias v. AMS*.

1

Systems, Inc. the total sum of Ten Thousand Seven Hundred Fifty-Six Dollars and Twenty Cents **($10,756.20)** and Plaintiffs the total sum of Eight Thousand Eight Hundred Forty-Three Dollar and Eleven Cents **($8,843.11)** within **forty-five (45) days** of the date of this Order.

I.     **Relevant Facts**

This multidistrict litigation ("MDL") involves pelvic mesh products manufactured, marketed, and distributed by AMS. The products include surgical mesh intended to be permanently implanted during operative procedures for the treatment of pelvic organ prolapse and stress urinary incontinence. Plaintiffs claim, in relevant part, that the mesh is defective, causing harm to the body and leading to complications, such as chronic pain and scarring. As a result, some of the plaintiffs have undergone surgical procedures to revise the implanted mesh, or to remove it altogether ("corrective surgeries").

In the course of discovery, AMS learned that a portion of the plaintiffs had their corrective surgeries arranged and funded through third-party funding companies. According to AMS, these arrangements were frequently complex, usually expensive, and occasionally unnecessary, as some of the plaintiffs receiving the funding had health insurance to cover similar procedures. AMS was stymied in its efforts to discover the details of the funding arrangements from the plaintiffs, who seemed to know little more about them than AMS. Confronted with a lack of transparency regarding a key element of damages, AMS began seeking information from nonparties about the third-party funding of corrective surgeries. At issue were both the cost and the medical necessity of the procedures.

On January 8, 2016, AMS served subpoenas for testimony and records on the Records Custodian of Optimum Orthopedics & Spine and on Muhammad-Zoheb Bhojani,

CEO and Manager of Optimum Orthopedics & Spine. The deponents were instructed to appear on January 28, 2016 at 9:00 a.m. at a court reporter's officer in Orlando, Florida and to bring the requested documents with them. The subpoenas included the standard information about the deponent's duties in responding, the protections afforded to the deponent, and steps to take in order to request quashal or modification of the subpoena. On January 28, Mr. Bhojani appeared, both in his individual capacity and as the records custodian for Optimum Orthopedics & Spine. Although he brought some records with him, it quickly became apparent that Mr. Bhojani had not read the subpoena carefully and had not made a conscientious effort to comply with the document requests.

The deposition commenced with Mr. Bhojani explaining that he managed Optimum Orthopedics & Spine and was appearing in response to both subpoenas. Mr. Bhojani answered preliminary questions, but when the line of inquiry turned to Mr. Bhojani's dealings with lawyers representing plaintiffs in pelvic mesh cases, Mr. Bhojani replied: "I don't feel comfortable answering that question without my attorney. I don't see why I'm being asked these questions, too be honest with you." Ultimately, Mr. Bhojani refused to answer any such questions, asserting his Fifth Amendment right against self-incrimination. Mr. Bhojani continued to plead the Fifth Amendment in response to any question he did not wish to answer, regardless of whether or not the question implicated him criminally. The deposition concluded with Mr. Bhojani sharing little substantive information regarding the arranging, scheduling, and funding of corrective surgeries. Accordingly, AMS filed a Motion to Compel and for Sanctions. Plaintiffs subsequently filed their own motion seeking reimbursement of reasonable attorneys' fees and costs incurred in taking the useless deposition of Mr. Bhojani.

On February 25, 2016, the undersigned granted AMS's Motion to Compel and entered an Order making the following findings:

1. Mr. Bhojani was served with the subpoenas and appeared in response to them;

2. Mr. Bhojani did not file a motion for a protective order, or a motion to quash or modify the subpoenas;

3. Mr. Bhojani failed to conduct a reasonable search of company records in order to comply with the subpoenas;

4. Mr. Bhojani's document production did not comply with the subpoenas;

5. Mr. Bhojani failed to answer questions asked under Fed. R. Civ. P. 30, asserting a Fifth Amendment privilege when such a privilege was inappropriate;

6. Mr. Bhojani's actions prevented the parties from obtaining reasonable discovery.

7. Mr. Bhojani did not comply with either subpoena.

Mr. Bhojani was ordered to appear for a second deposition to testify on his own behalf and as the custodian of records of Optimum Orthopedics & Spine, to produce all documents requested in the attachment to the subpoenas for testimony, and to provide answers to all questions unless a valid privilege or protection applied. Mr. Bhojani's deposition was reconvened on March 17, 2016, and this time was completed without the need for judicial intervention. Consequently, all that remains now are the motions for fees and costs related to Mr. Bhojani's obstructive behavior at the first deposition.

## II. <u>Analysis</u>

Federal Rule of Civil Procedure 30(d)(2) authorizes the Court to "impose an appropriate sanction–including the reasonable expenses and attorney's fees incurred by

any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The term "person" includes "the deponent, any party, or any other person involved in the deposition." *See* Fed. R. Civ. P. 30(d) advisory committee's note (2000). Although the phrase "appropriate sanction," is not more fully defined in the Rule, "the imposition of discovery sanctions is generally within the sound discretion of the trial court." *Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 712 (E.D. Va. 2010), *aff'd,* 442 F. App'x 752 (4th Cir. 2011) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *GMAC Bank v. HTFC Corp.,* 248 F.R.D. 182, 185 n. 4 (E.D.Pa.2008)). When considering an award of sanctions, the Court should bear in mind the two general purposes to be served by such an award: "to penalize those whose conduct may be deemed to warrant such a sanction" and "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 1:13-CV-00133-RLY, 2015 WL 5775455, at *1 (S.D. Ind. Sept. 30, 2015) *(quoting NHL v. Metro. Hockey Club,* 427 U.S. 639 at 643).

Here, the circumstances clearly justify an award of sanctions, because Mr. Bhojani's acts and failures to act impeded, delayed, and frustrated his examination. To begin, Mr. Bhojani failed to take reasonable steps in preparation of the deposition. Although he was served with the subpoenas to testify and produce documents two weeks before the deposition was scheduled to occur, Mr. Bhojani did not personally search for the subpoenaed documents and made no effort to insure that a reasonable search was conducted. (*See Centola* at ECF No. 72-1). While Mr. Bhojani brought some records pursuant to the subpoenas—specifically, records pertaining to the plaintiffs—he was unable to confirm that that his office staff had collected **all** of the plaintiffs' documents.

5

As to his individual and business records, Mr. Bhojani confessed that he had made no effort to collect them, claiming that he did not understand the plain language of the subpoena, which required him to bring the records with him to the deposition. (*Id.* at 22). Moreover, Mr. Bhojani clearly made a conscious decision not to consult with or bring his attorney to the deposition, even though he had an attorney and knew in advance that the subject matter of the deposition involved pelvic mesh litigation. At the deposition, Mr. Bhojani nonetheless declined to answer basic questions about his relationship to pelvic mesh litigants on the ground that he did not "feel comfortable" answering the questions "without [his] attorney." (*Id.* at 19). He refused to provide the name of his attorney, and when pressed to answer questions, he pled the Fifth Amendment. Mr. Bhojani continued to plead the Fifth Amendment in response to questions notwithstanding his admission that answering the questions *would not* expose him to criminal liability. (*Id.* at 38). He even refused to answer routine background questions about his education and work history. Mr. Bhojani stonewalled, equivocated, and feigned ignorance throughout the deposition. Consequently, after going to the time and expense of serving Mr. Bhojani with subpoenas, preparing for the deposition, traveling to Florida, and appearing for the deposition, counsel for Plaintiffs and AMS obtained very little useful information; thus, requiring them to file a motion to compel, participate in a hearing, obtain an order, serve Mr. Bhojani with a second set of subpoenas, and take the deposition all over again.

Having concluded that an award of fees and costs is appropriate in this case, the undersigned turns to a calculation of the award. Under Rule 30(d), an "assessment of expenses incurred in relation to motions made under this subsection (d) is made subject to the provisions of Rule 37(a)." Fed. R. Civ. P. 30(d) advisory committee's note (1970). When calculating an award of reasonable fees and costs under Fed. R. Civ. P. 37(a)(5), the

6

Court first determines "a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The United States Court of Appeals for the Fourth Circuit has identified twelve factors to consider "[i]n deciding what constitutes a 'reasonable' number of hours and rate," including the following:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson,* 560 F.3d at 243-244 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)). In the context of a discovery motion, factors 1, 2, 3, 5, 9, and 12 are generally most applicable to the analysis. Although Plaintiffs and AMS provided the Court with some information relevant to some of the twelve factors, neither supplied sufficient detail on all of the key factors; therefore, the Court will evaluate the parties' requests for fees and costs based upon information in the record, as well as data in other court documents of which the Court may take judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (holding that the court may take judicial notice of the content of court documents).

Beginning with a reasonable hourly rate, Plaintiffs are represented by three attorneys, and AMS is represented by three attorneys. Evidence regarding the skill, experience, reputation, and ability of the attorneys was not provided by the parties and is

7

not part of the record immediately before the Court; however, as they have all been involved in the pelvic mesh litigation for some time, the undersigned is aware that Mr. McSweeney, Mr. Lavigne, Ms. Binis, and Mr. Scott are all senior attorneys with years of experience, and Ms. Babb and Mr. Wortherspoon are more junior in their training and experience. All of the attorneys are litigators. Nevertheless, the particular discovery matter at issue is not exceedingly novel or difficult; it falls within the scope of practice of any attorney specializing in general litigation. Accordingly, a reasonable hourly rate in this case would be one falling within the accepted market range of a general litigator practicing within the Southern District of West Virginia. *See Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990). The duty to provide evidence of the prevailing hourly rate rests with the party seeking an award of fees. *Id.* Neither Plaintiffs nor AMS offered evidence of the prevailing hourly rates in the market. Despite that failure, the Court is disinclined to delay its ruling in order to receive evidence from Plaintiffs and AMS regarding the current rates regularly charged by litigators; particularly, as guidance is available by looking at other fee awards granted in the Southern District of West Virginia.

In March 2016, District Judge Irene C. Berger found an hourly rate of $250 to be reasonable in a product liability action.[4] In 2015, in a civil rights action, Chief District Judge Robert C. Chambers awarded attorneys' fees based on hourly rates ranging from $225 to $500, depending upon each attorney's level of experience and specialization of services.[5] In March 2014, District Judge John T. Copenhaver, Jr. agreed that $250 per hour was generally accepted as a reasonable rate and awarded that amount in an action

---

[4] *Wellman v. Ford Motor Company, et al.,* Civil Action No. 5:15-cv-03010, 2016 WL 1056594, at * 2 (S.D.W.Va. Mar. 16, 2016)

[5] *McGhee v. Cole*, 115 F. Supp.3d 765, 775 (S.D.W.Va. 2015).

8

alleging unfair debt collection practices.[6] In March 2013, District Judge Thomas E. Johnston determined that hourly rates of $375, $175, and $160 were appropriate in a predatory lending case.[7] Similarly, in March 2011, District Judge Joseph R. Goodwin accepted the hourly rates of $190 and $175 requested by the attorneys of the prevailing party, based upon the affidavits of three local attorneys uninvolved in the litigation, who commented on prevailing market rates, as well as recent awards in comparable cases.[8] In February 2011, Judge Chambers determined that an hourly rate of $225 was appropriate in an ERISA action in view of the attorney's limited length of practice (six years) and his lack of experience in ERISA disputes (this was his first such case).[9] In January 2011, Judge Copenhaver approved, as reasonable, hourly rates of $350, $335, and $215 in an environmental protection action, commenting on the specialized experience of the attorneys and the expertise required by the nature of the case.[10] In June 2010, Judge Chambers found hourly rates of $350, $275, and $175 to be reasonable in a predatory lending case, in part due to the specialized experience of the attorneys and in part due to prior fee awards in similar cases involving the same attorneys.[11] In March 2010,

---

[6] *Finney v. MIG Capital Management Inc.,* Civil Action No. 2:13-02778, 2014 WL 1276159, at *15 (S.D.W.Va. Mar. 7, 2014).

[7] *Koontz v. Wells Fargo N.A.,* Civil Action No. 2:10–cv–00864, 2013 WL 1337260, at *18 (S.D.W.Va. March 29, 2013).

[8] *Stalnaker v. Fidelity and Deposit Company of Maryland,* Civil Action No. 2:10–cv–00964, 2011 WL 1113407, at *2 (S.D.W.Va. Mar. 25, 2011).

[9] *Frye v. Metropolitan Life Insurance Company,* Civil Action No. 3:10–0107, 2011 WL 466686, at *3 (S.D.W.Va., Feb. 4, 2011).

[10] *West Virginia Highlands Conservancy, Inc. et al. v. Huffman,* Civil Action No. 2:07–0410, 2011 WL 90163, at *4 (S.D.W.Va., Jan. 10, 2011).

[11] *Watkins v. Wells Fargo Home Mortgage,* Civil Action No. 3:08–0132, 2010 WL 2486247, at *3 (S.D.W.Va., Jan 15, 2010). Judge Chambers noted that in June 2006 the Court had awarded fees to the same lawyers based upon hourly rates of $300 and $225, and the Circuit Court of Roane County, West Virginia had approved their requested hourly rates of $400 and $300 in October 2009.

9

Magistrate Judge R. Clarke Vandervort found an hourly rate of $225 to be reasonable in an action brought under the United Services Employment and Reemployment Rights Act of 1994 ("USERRA") after considering the affidavits of two local attorneys, who stated that the hourly rate typically charged by attorneys in this type of litigation ranged between $200 and $300.[12]

In view of these awards and the type of work involved in this motion, the Court finds that the hourly rates proposed by AMS are excessive for an award of fees.[13] On the other hand, the Court finds that the rates submitted by Plaintiffs fall within a range of reasonable when taking into account the following additional factors: (1) the motion was filed in the context of complex multidistrict litigation; (2) discovery has been uniquely demanding in the MDLs; and (3) specialized knowledge of the relevant medicine and devices is required in order to prosecute and defend the issues in the pelvic mesh litigation. Therefore, the attorneys involved in the MDLs tend to demand and receive higher hourly rates than most general litigators even when specific tasks are not particularly complicated. Consequently, the undersigned finds that a reasonable hourly rate for senior attorneys is $400 and for junior attorneys is $250.

With the reasonable hourly rates determined, the Court must now examine the reasonableness of the number of hours claimed by the parties. In addition to requesting fees associated with drafting and pursuing the Motion to Compel and for Sanctions, the

---

[12] *Mills v. East Gulf Coal Preparation Company, LLC,* Civil Action No. 5:08–0260, 2010 WL 1050359, at *6 n.3 (S.D.W.Va.). Magistrate Judge Vandervort also noted that this hourly rate was at the high end of reasonable in the Beckley legal community.

[13] AMS requests $701.25 per hour for senior attorneys and $280.50 for the junior attorney, while Plaintiffs propose hourly rates of $400 for senior attorneys and $250 for the junior attorney.

parties seek fees incurred in conducting the depositions of Mr. Bhojani. "When reviewing a fee petition, the Court must exclude any hours that are excessive, redundant, or otherwise unnecessary." *Allen v. Monsanto Company,* No. 2:05-0578, 2007 WL 1859046 at *2 (S.D.W.Va., June 26, 2007) (citing *Hensley y v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "Counsel for a prevailing party has a duty to exercise 'billing judgment' to 'exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . .'" *Daly v. Hill,* 790 F.2d 1071, 1079 (4th Cir. 1986) (quoting *Hensley,* 461 U.S. at 434)).

The Court finds that the parties are entitled to recover the fees incurred in preparing for and taking Mr. Bhojani's first deposition, and in preparing and participating in the Motion to Compel and for Sanctions. However, the parties are not entitled to reimbursement for fees associated with Mr. Bhojani's second deposition, as the parties would have incurred fees and expenses associated with a fair examination of Mr. Bhojani even if he had fully cooperated from the outset. Consequently, the parties should not expect to receive reimbursement for a voluntarily-incurred and anticipated litigation expense.

Thus, with respect to Plaintiffs' itemization, the undersigned finds that Plaintiffs are entitled to reimbursement of 18 hours of Mr. McSweeney's time, which represents the time involved in preparing for, traveling to, and taking Mr. Bhojani's first deposition. One hour has been subtracted from the requested amount for the time spent by Mr. McSweeney in reading Mr. Bhojani's deposition transcript, as (1) review was not necessary given that Mr. McSweeney did not take the second deposition; and (2) he likely would have reviewed the transcript at some point in the litigation regardless of Mr.

Bhojani's antics. Since the time spent by Ms. Babb and Mr. Langevin was unrelated to the taking of the first deposition, their time is disallowed. In total, then, Plaintiffs are entitled to attorneys' fees in the amount of $7,200.

In regard to AMS's fees, the undersigned finds that AMS is entitled to reimbursement of 19 hours of Mr. Scott's time, or $7,600.00, which represents the time involved in preparing for, traveling to, and taking Mr. Bhojani's first deposition, communicating with counsel for Optimum, and participating in the drafting of the Motion to Compel and for Sanctions. AMS is not entitled to be reimbursed for the presence of two attorneys at the same deposition given that only one attorney was permitted to question the witness. Duplicative time spent reviewing and revising documents has also been excluded. Although Ms. Binis participated in various telephone calls, the length and purpose of the calls have not been itemized. Therefore, the undersigned cannot determine the reasonableness of the request for fees. AMS is entitled to reimbursement for Ms. Binis's participation in a telephonic hearing conducted by the Court on the Motion to Compel, for an additional $120 in fees. (*Centola* at ECF No. 58). Finally, AMS is entitled to reimbursement of Mr. Wotherspoon's time incurred in reviewing materials in anticipation of drafting the Motion to Compel, and in researching and drafting the Motion, totaling 10.1 hours, or $2525.00. His time spent in the telephonic hearing has been subtracted as duplicative of Ms. Binis's appearance. In total, then, AMS is entitled to attorneys' fees in the amount of $10,245.00.

As for expenses, Plaintiffs have supplied an affidavit signed by counsel indicating that they spent $1643.11 on travel expenses from Minnesota to Orlando for Mr. Bhojani's deposition. (*Centola* at ECF No. 72-1 at 2). AMS provided an affidavit signed by counsel stating that Ms. Binis's ticket was $1,940.20 and Mr. Scott's ticket was $511.20. As

previously stated, it is not reasonable to require Mr. Bhojani to pay the expenses of two lawyers representing the same client. Since Mr. Scott questioned Mr. Bhojani at the first deposition, AMS is entitled to reimbursement for his airline ticket at $511.20.

### III. Conclusion

Wherefore, for the foregoing reasons, Muhammed-Zoheb Bhojani is hereby **ORDERED** to pay American Medical Systems, Inc. the total sum of Ten Thousand Seven Hundred Fifty-Six Dollars and Twenty Cents **($10,756.20)** and Plaintiffs the total sum of Eight Thousand Eight Hundred Forty-Three Dollar and Eleven Cents **($8,843.11)** within **forty-five (45) days** of the date of this Order.

Counsel for AMS is **ORDERED** to serve a copy of this Order on Muhammad-Zoheb Bhojani.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:** June 8, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge